UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                No. 1:04-cr-43-cr-1

Edward Boynton

## REPORT AND RECOMMENDATION
(Doc. 33)

      Defendant Edward Boynton is currently serving a 188-month prison term following his guilty plea to one count of conspiracy to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 846. (*See generally* Docs. 15, 27; *see also* Doc. 1 at 1; Doc. 29 at 1–2.) The Presentence Report (PSR) prepared by the Probation Office determined that Boynton qualified for a career offender enhancement under United States Sentencing Guidelines (USSG) §§ 4B1.1 and 4B1.2 because the offense of conviction was a "controlled substance" felony offense, and because he had two qualifying prior felony convictions—for assault and for possession with intent to distribute cocaine. (PSR at 9, ¶ 44.) Boynton was sentenced on February 8, 2005 (Docs. 27, 48), and did not file a direct appeal.

In June 2016, with benefit of counsel, Boynton filed a Motion to Correct Sentence Under 28 U.S.C. § 2255 on the grounds that he does not qualify as a career offender in light of the United States Supreme Court's June 2015 holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Doc. 33.) More specifically, Boynton contends that, under *Johnson*, he is "no longer a career offender because his prior conviction in Maryland for common law assault no longer qualifies as a 'crime of violence.'" (*Id.* at 1.) At the government's request, and over Boynton's objection, the case was stayed in August 2016, pending the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017). (*See* Docs. 35, 39, 43.) *Beckles* was decided on March 6, 2017 and the court subsequently vacated the stay on Boynton's pending § 2255 Motion (Doc. 52). For the reasons explained below, I recommend that the Motion be DENIED.

## Analysis

In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. at 2557. About a year later, the Supreme Court held in *Welch v. United States*, 136 S. Ct. 1257, 1264–65 (2016), that the *Johnson* holding applies retroactively on collateral review because it announced a new substantive rule of constitutional law. Thus, federal prisoners whose sentences rested on the ACCA's now-voided residual clause may file for relief under § 2255. But Boynton's sentence was not enhanced under the residual clause of the ACCA; rather, as stated above, Boynton argues that he was sentenced as a career

offender under the advisory Guidelines residual clause of § 4B1.2(a)(2).[1]  This characterization is not entirely accurate.[2]  But regardless, because the ACCA's residual clause and the residual clause of USSG § 4B1.2(a) are identical, Boynton asserts that *Johnson* renders both clauses void for vagueness, and thus his sentence violated his right to due process.  Until the *Beckles* decision was issued, however, it was "an open question" whether the decision in *Johnson* applies retroactively on collateral review to sentences imposed under the Guidelines.  *United States v. Velasquez*, 08-CR-56 (BMC), 16-CV-3432 (BMC), 2016 WL 4148316, at *2 (E.D.N.Y. Aug. 4, 2016).

---

[1]  At the time of Boynton's sentencing, USSG § 4B1.1 stated that a defendant is subject to the career offender guideline if his offense of conviction is "either a crime of violence or a controlled substance offense," and he has at least two such prior convictions.  USSG § 4B1.1(a) (2004).  The residual clause of USSG § 4B1.2(a)(2) defined a "crime of violence" as an offense that "*involves conduct that presents a serious potential risk of physical injury to another.*"  *Id.* § 4B1.2(a)(2) (emphasis added).  At sentencing, the two prior convictions qualifying Boynton for a career offender enhancement were: an assault conviction in Maryland that was a "crime of violence" and a conviction for possession with intent to distribute cocaine as a "controlled substance offense."  (Statement of Reasons (SOR) at 1, ¶ 4; Doc. 48 at 5–6.)
   USSG § 4B1.2 alternatively defined crime of violence as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (known as the elements clause) or an offense that "is burglary of a dwelling, arson, or extortion, [or] involves use of explosive" (known as the enumerated offenses clause).  *Id.* § 4B1.2(a)(1)–(2).  The parties apparently do not dispute that the other definitions of "crime of violence" under § 4B1.2 did not apply to Boynton's Maryland assault conviction.  (*See, e.g.*, Doc. 33 at 3–4; Doc. 53 at 2; Doc. 62 at 1.)

[2]  At sentencing, both parties and the court explicitly noted that Boynton's sentence would be the same, irrespective of whether the career offender guideline applied.  (Doc. 48 at 3, 6; *see also* SOR at 1, ¶¶ 2–4.)  Boynton's adjusted offense level was calculated at 34, either from: (1) the offense of conviction—conspiracy to possess with intent to distribute cocaine base—corresponding to a base level of 32 and increased two levels for Boynton's role as the "organizer, leader, manager, or supervisor in the conspiracy"; or (2) the career offender enhancement.  (Doc. 48 at 6; SOR at 1, ¶¶ 2–4.)  The court reduced the offense level to 31 to reflect Boynton's acceptance of responsibility.  (Doc. 48 at 6; SOR at 1, ¶ 5.)  The court also engaged in an analysis of the other sentencing factors under 18 U.S.C. § 3553(a).  (Doc. 48 at 9.)  An offense level of 31 and a criminal history category of VI corresponded to a guideline imprisonment range of 188 to 235 months.  (Doc. 51 at 6; SOR at 1, ¶ 6.)  Boynton was sentenced at the bottom of this range.  (Doc. 48 at 6–7; SOR at 2, ¶ 8.)
   The parties filed supplemental briefing on the impact of how Boynton's sentence was calculated (*see* Docs. 63, 64), but ultimately the parties' disagreement on this issue is of minimal consequence to the court's recommendation on the pending Motion.

In *Beckles*, the Supreme Court answered that question in the negative, holding that the advisory Guidelines are not subject to a vagueness challenge under the Due Process Clause, and that the residual clause in USSG § 4B1.2(a)(2) is therefore not unconstitutionally vague. 137 S. Ct. at 890. The Court reasoned: "Unlike the ACCA . . . , the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 892.

Relatedly, the distinction between the mandatory and advisory Guidelines was paramount to the Court's decision in *Beckles*. As the Court explained, the Guidelines "were initially binding on district courts," until the Court "rendered them 'effectively advisory'" in *United States v. Booker*, 543 U.S. 220 (2005). 137 S. Ct. at 894 (quoting *Booker*, 543 U.S. at 245). Since *Booker*, "a sentencing court may no longer rely exclusively on the Guidelines range." *Id.* Instead, the Guidelines are but one factor that the court must consider at sentencing, in addition to engaging in an analysis of the other sentencing factors under 18 U.S.C. § 3553(a). *Id.* at 894, 896. The *Beckles* Court concluded that the advisory nature of the Guidelines after *Booker* defeats any vagueness challenges under the Due Process Clause because the "the twin concerns underlying [the] doctrine—providing notice and preventing arbitrary enforcement"—are not implicated. *Id.* at 894. With respect to notice, the Court explained that "even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range," because, for example, even if an individual attempts "to avoid an enhanced sentence under the career-offender guideline,

4

the sentencing court retains discretion to impose the enhanced sentence." *Id.* ("'[T]he due process concerns that . . . require notice in a world of mandatory Guidelines no longer' apply." (second alteration in original) (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008))). Issues with arbitrary enforcement, the Court reasoned, are similarly not implicated because sentencing courts do not *enforce* the advisory Guidelines, but rather use them to guide their discretion "within the bounds established by Congress." *Id.* at 895. The Court concluded that, "[b]ecause the advisory Sentencing Guidelines are not subject to a due process vagueness challenge, § 4B1.2(a)'s residual clause is not void for vagueness." *Id.* at 897.

In light of this precedent, Boynton's Motion fails for two primary reasons, discussed in detail below. First, the court sentenced Boynton after *Booker*, when the Guidelines were explicitly advisory, and *Beckles* forecloses due process challenges to the career offender residual clause under the advisory Guidelines. Second, even assuming Boynton was sentenced under the mandatory Guidelines, the Supreme Court has not extended *Johnson* to make the career offender residual clause unconstitutionally vague, and Boynton's Motion is accordingly time-barred. For these reasons, no reasonable jurist could debate the district court's decision to deny Boynton's § 2255 Motion (Doc. 33), and it should be DENIED.

I.   *Beckles* **Forecloses Boynton's Motion.**

Boynton argues that because *Beckles* bars only due process challenges to the *advisory* Guidelines, the void-for-vagueness holding of *Johnson* can be extended to the career offender provision of the mandatory Guidelines. (Doc. 57 at 3.) This argument is

5

fatally flawed because Boynton was in fact sentenced under the advisory Guidelines—a point that Boynton himself admits and brushes aside. (*Id.* at 1, 10–11.)

Again, the Court in *Beckles* held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause," and "§ 4B1.2(a)'s residual clause is not void for vagueness." 137 S. Ct. at 895. This holding explicitly rejects Boynton's claim in his Motion—that his Maryland assault conviction does not qualify as a crime of violence under § 4B1.2(a) because that provision is unconstitutionally vague. *See, e.g.*, *United States v. Savage*, Cause No. CR 04–128–BLG–SPW, CV 16–083–BLG–SPW, 2017 WL 1383660, at *2 (D. Mont. Apr. 13, 2017) (finding *Beckles* barred defendant's § 2255 challenge to the career offender residual clause under the Guidelines, where defendant was sentenced approximately six months after the Guidelines became advisory); *see also United States v. Patterson*, 853 F.3d 298, 305 (6th Cir. 2017) (finding *Beckles* foreclosed a challenge to the classification of a prior conviction as a crime of violence under the residual clause of the advisory Guidelines); *McPeters v. United States*, Case No. LA CR 06-00167-VBF-1, LA CR 06-00409-VBF-1, LA CV 16-06079-VBF, LA CV 16-06135-VBF, 2017 WL 2115815, at *3 (C.D. Cal. May 12, 2017) (holding that, because the Guidelines are not subject to vagueness challenges under *Beckles*, the *Johnson* holding did not impact defendants sentenced under the career offender guideline (collecting cases)), *appeal docketed*, No. 17-55772 (9th Cir. May 31, 2017). Boynton attempts to avoid the impact of *Beckles* by arguing that he was sentenced at a time when the Guidelines were *effectively* mandatory, notwithstanding *Booker*. (Doc. 57 at 10.) In other words, Boynton proposes an exception to the *Beckles*

6

holding for defendants like him who, he claims, were sentenced by courts that allegedly continued to treat the Guidelines as mandatory even after *Booker*. Notwithstanding the fact that such an exception does not exist, the record is clear that this court explicitly recognized *Booker* and the advisory nature of the Guidelines at Boynton's sentencing.

Boynton was sentenced on February 8, 2005 (Docs. 29, 48), approximately one month after the *Booker* decision was issued, as Boynton acknowledges in his Supplemental Briefing in support of his § 2255 Motion (Doc. 57 at 10). But Boynton claims the *Booker* decision "was not mentioned at sentencing or in the [c]ourt's written statement of reasons." (*Id.* at 11.) This claim is contradicted by the record: both parties submitted sentencing memoranda referencing the *Booker* decision (Doc. 24 at 2 ("As the court is well aware, in [*Booker*], the Supreme Court held that the United States Sentencing Guidelines are, essentially, advisory."); Doc. 25 at 1 (Boynton arguing, with respect to the Guideline calculation and sentence proposed in the PSR, that "[p]unishment at this level clearly overstates the case and provides this [c]ourt the opportunity to exercise its discretion under [*Booker*]")); the sentencing judge, United States District Judge J. Garvan Murtha, stated at sentencing, "I obviously did consider [that] the [G]uidelines are advisory at this point and I have considered the factors in [18 U.S.C. §] 3553" (Doc. 48 at 9); and the court's Supplemental Statement of Reasons states, "[s]ince the Guidelines are no longer mandatory, but advisory, the Court imposed the sentence after also considering the factors set forth in 18 U.S.C. § 3553" (Supp. SOR).

In sum, Boynton's Motion presents precisely the type of challenge to his sentence that the Supreme Court rejected in *Beckles*. Even if the exception to *Beckles* that Boynton

7

envisions existed, the sentencing court here was well aware that Boynton was being sentenced under an advisory Guidelines framework. Accordingly, Boynton's Motion is barred under *Beckles* and should be DENIED.

## II.     Boynton's Motion is Time-Barred.

Even assuming Boynton was sentenced under the mandatory Guidelines, his Motion fails because it is untimely. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), § 2255 motions are subject to a one-year limitations period, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Here, judgment was entered against Boynton on February 9, 2005, and he did not appeal. (*See* Docs. 27, 29.) The judgment therefore became final 14 days after it was entered, on February 23, 2005. *See Clay v. United States*, 537 U.S. 522, 525 (2003) ("For the purpose of starting the clock on § 2255's one-year limitation period, a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Because Boynton filed the instant Motion on June 22, 2016 (*see* Doc. 33)—over ten years after the

8

judgment became final—it falls well outside § 2255(f)(1)'s one-year limitations period. Subsections (f)(2) and (f)(4) of § 2255 clearly have no application here.

Boynton contends his Motion is timely under § 2255(f)(3) because it was filed within one year of *Johnson* (decided on June 26, 2015), which established a "'newly recognized' right that is 'retroactively applicable to cases on collateral review.'" (Doc. 57 at 2 (quoting 28 U.S.C. § 2255(f)(3)).) While the Supreme Court held in *Welch* that *Johnson* applies retroactively on collateral review because it announced a new substantive rule of constitutional law, 136 S. Ct. at 1264–65, this rule was that a prisoner could collaterally challenge a sentence imposed under the unconstitutionally vague residual clause of the ACCA. "*Johnson* and *Welch* did not call into question § 4B1.2(a)(2) of the Guidelines, the Guidelines in general, or any other sentencing provisions with similarly worded clauses." *United States v. Ojeda*, 8:01CR196, 2017 WL 1495981, at *3 (D. Neb. Apr. 26, 2017) (citing *Johnson*, 135 S. Ct. at 2561 (dismissing suggestion that similarly worded "federal and state criminal laws" would be subject to "constitutional doubt"); *Welch*, 136 S. Ct. at 1262 (explaining that "[t]he Court's analysis in *Johnson* . . . cast no doubt on the many laws that require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion")), *appeal docketed*, No. 17-1955 (8th Cir. May 3, 2017).

Further undercutting Boynton's position, Justice Sotomayor explicitly noted in her concurring opinion in *Beckles* that "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least *leaves open the question* whether defendants sentenced . . . during the period in which the Guidelines [were mandatory] . . .

9

may mount vagueness attacks on their sentences." *Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring in the judgment) (citations omitted) (emphasis added). But Justice Sotomayor cautioned: "That question is not presented by this case and I, like the majority, take no position on its appropriate resolution." *Id.*; *see also Hirano v. United States*, Civ. No. 16-00686 ACK-KJM, Cr. No. 99-00465 ACK, 2017 WL 2661629, at *7 (D. Haw. June 20, 2017); *United States v. Autrey*, Criminal No. 1:99-cr-467, Civil Action No. 1:16-cv-788, 2017 WL 2646287, at *4 (E.D. Va. June 19, 2017). Therefore, even if the court were to assume Boynton was sentenced under the mandatory Guidelines so that *Beckles* did not explicitly bar his Motion, "the holding in *Johnson* did not announce a new rule invalidating the residual clause in § 4B1.2(a)(2) of the [mandatory] Guidelines," and Boynton's Motion would nevertheless be time-barred under § 2255(f)(3). *Ojeda*, 2017 WL 1495981, at *3.

Boynton claims that his Motion is timely under § 2255(f)(3) because he is asserting the same right that the Supreme Court recognized in *Johnson*. (Doc. 62 at 10–11; *see also* Doc. 33 at 15–19; Doc. 57 at 12–13.) In actuality, Boynton asks this court to extrapolate from *Beckles*'s holding, that *Johnson* did not invalidate the career offender provision of the *advisory* Guidelines, a finding that *Johnson* made this provision unconstitutional under the *mandatory* Guidelines. This proposed reading "seeks an extension, not an application, of the rule announced in *Johnson*." *Ojeda*, 2017 WL 1495981, at *3. That is, "[r]ather than relying on the rule of [*Johnson*]," Boynton "seeks a second, new rule extending [*Johnson*] to the mandatory Sentencing Guidelines." *Mitchell v. United States*, Case No. 3:00-CR-00014, 2017 WL 2275092, at *5 (W.D. Va. May 24, 2017). But §

10

2255(f)(3), by its plain language, requires such a new rule to originate from the Supreme Court, not this court. *See, e.g.*, *Ojeda*, 2017 WL 1495981, at *3; *see also Donnell v. United States*, 826 F.3d 1014, 1017 (8th Cir. 2016) (finding that movant's argument for an extension of *Johnson* beyond the residual clause in the ACCA "urges the creation of a second new rule," a task for the Supreme Court alone); *United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012) ("Section 2255(f)(3) does not authorize [a lower court] to read between the lines of a prior opinion [by the Supreme Court] to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review.").

Most federal district courts to consider this question in the wake of *Beckles* have concluded that *Johnson* did not announce a new right applicable to the mandatory Guidelines, and that petitioners cannot extend *Johnson* in this manner absent a decision from the Supreme Court. *See, e.g.*, *Hirano*, 2017 WL 2661629, at *7; *Autrey*, 2017 WL 2646287, at *4; *Mitchell*, 2017 WL 2275092, at *5; *Hodges v. United States*, CASE NO. C16-1521JLR, 2017 WL 1652967, at *3 (W.D. Wash. May 2, 2017), *appeal docketed*, No. 17-35408 (9th Cir. May 12, 2017); *Ojeda*, 2017 WL 1495981, at *3; *United States v. Russo*, 8:03CR413, 2017 WL 1533380, at *4 (D. Neb. Apr. 27, 2017). *But see Reid v. United States*, NO. 03–CR–30031–MAP, NO. 16–CV–30111–MAP, 2017 WL 2221188, at *5 (D. Mass. May 18, 2017) (holding that *Johnson* applies to mandatory Guidelines[3]).

---

[3] Despite this holding, *Reid* provides little support to Boynton's Motion, as the defendant in that case—unlike Boynton here—was sentenced in 2004, prior to *Booker*. *Id.* at *1. Though the court in *Reid* found that *Beckles* did not bar a challenge to a pre-*Booker* sentence (*id.* at *4), it also noted that "*Beckles* makes clear that if Petitioner had been sentenced as a Career Offender *after* the 2005 *Booker* decision, the *Johnson* authorities would not assist him in obtaining relief now." *Id.* at *1.

11

Accordingly, this court cannot extend the rule in *Johnson* to the residual clause of the mandatory Guidelines, even if Boynton had been sentenced before *Booker*, when the Guidelines were mandatory. The Supreme Court has not created such a rule, and therefore Boynton's Motion is time-barred under § 2255(f)(3) and should be DISMISSED.[4]

Furthermore, Boynton is not entitled to equitable tolling of the statute of limitations, which "applies only in the rare and exceptional circumstance[]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (alteration in original) (internal quotation marks omitted). In the Second Circuit, "tolling is appropriate only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[ ] stood in his way and *prevented timely filing*." *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (first alteration in original) (internal quotation marks omitted). Boynton has not satisfied these standards.

## Conclusion

For these reasons, I recommend that Boynton's § 2255 Motion to Correct Sentence (Doc. 33) be DENIED. Boynton's Motion rests entirely upon the contention that the residual clause of USSG § 4B1.2(a) is unconstitutionally vague. In light of the Supreme Court's recent decision in *Beckles*, this argument is meritless.

---

[4] The government advances several other reasons to dismiss Boynton's Motion, including that a *Johnson* challenge to the mandatory Guidelines would be barred by *Teague v. Lane*, 489 U.S. 288 (1989), that Boynton's Motion is procedurally defaulted, and that the mandatory Guidelines are not subject to vagueness challenges. (Doc. 58 at 8–23; *see* Doc. 62.) The court need not address these claims, however, given that Boynton's Motion fails for the reasons discussed above, and because analyzing these claims would be hypothetical and invite speculation (namely because the court would need to falsely assume not only that Boynton was sentenced under the mandatory Guidelines framework, but also that Boynton's Motion is not time-barred).

12

An evidentiary hearing is neither necessary nor warranted, as the only issue raised in the § 2255 Motion can be resolved on the existing record, which conclusively demonstrates that Boynton is not entitled to relief. Moreover, the court should decline to issue a certificate of appealability, given that I am unable to find that "reasonable jurists could debate whether . . . [Boynton's motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted); *see* 28 U.S.C. § 2253(c)(2) (certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); *see also McPeters*, 2017 WL 2115815, at *4 (finding petitioner, who claimed that he should not have received a Guidelines classification as a career offender under *Johnson*, was not entitled to certificate of appealability in light of *Beckles*).

Dated at Burlington, in the District of Vermont, this 26th day of July 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).